# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE GORDON LAW GROUP, LTD., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 24-cv-2817 |
| FPSG LLC, an Illinois Limited Liability Company & JUSTIN MCCORMICK, an Illinois resident | ) ) Hon. Judge: Martha M. Pacold ) |
| Defendants | ) ) |

**PLAINTIFF GORDON LAW GROUP, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I.   INTRODUCTION

The Gordon Law Group, Ltd. ("Gordon Law," "GLG" or the "Firm") practices in the burgeoning field of cryptocurrency taxation. (Verified Complaint, "VC" ¶¶3, 12; *see also* Affidavit of Andrew B. Gordon, attached as Exhibit A, hereto, "AG Aff." ¶2). GLG hired Justin McCormick ("McCormick") directly out of law school, when he had no prior experience in the field of cryptocurrency taxation, and trained him in GLG's unique, internally developed, procedures for completing cryptocurrency tax reports. McCormick eventually became a team leader in GLG's crypto tax department and helped further evolve GLG's proprietary methods, templates, formulas, and script for preparing crypto tax reports.

McCormick, however, terminated his employment with GLG and went to work for FPSG LLC d/b/a "Founder's"—one of GLG's competitors. Despite signing a Confidentiality and Intellectual Property Agreement ("Agreement") while working for GLG, McCormick took GLG's proprietary process and procedures, including its templates, formulas and scripts, to Founder's and has used GLG's confidential information in his work for Founder's. Through a series of videos created by McCormick and Founder's (which they brazenly published on Founder's pubic YouTube.com webpage along with copies of templates and spreadsheets that are identical, or virtually identical, to GLG's and which contain GLG's proprietary formulas and scripts), GLG became aware that Defendants are using GLG's confidential information and trade secrets in their competing crypto tax report preparation work. Accordingly, a TRO and preliminary injunction are necessary to prevent ongoing breach of contract and misappropriation of GLG's Confidential Information and trade secrets.

II.   **GORDON LAW'S CONFIDENTIAL INFORMATION & TRADE SECRETS**

GLG utilizes a unique, internally developed, procedure for completing its clients' cryptocurrency tax reports. Over many years, and at great expense, GLG has created and refined

that procedure, and has developed templates and spreadsheets, including specific scripts and formulas, for compiling and structuring client cryptocurrency holdings data, calculating tax information, and preparing necessary reports therefore. (VC ¶ 14) Specifically, GLG's processes include methods and procedures for properly building a client "inventory"; pulling transaction data from online repositories in a unique manner and format; running the transaction data through its internally created "converters" to format the data for further processing; using GLG's internally created formatting and formulas (called "tidbits") to organize the data and calculate and format pricing data; analyzing and reconciling the data for upload to other online software for tax calculation and; checking the reporting for errors and finalizing for inclusion with tax returns. (VC ¶14-18; AG Aff. ¶¶5-9 & Exs. 1 - 3 thereto). GLG's unique procedures, templates and formulas enable it to prepare tax reports that are more accurate, provide greater tax advantages for clients, and to do so in the most efficient and streamlined manner, giving it a competitive advantage. (VC ¶19; AG Aff. ¶¶ 10-11).

### III. DEFENDANTS ARE USING & DISCLOSING GLG's CONFIDENTIAL INFORMATION and TRADE SECRETS

McCormick's position with Founder's appears to be identical to his former position with GLG. At Founder's, he is a Senior Associate in the Digital Asset Department and he works on preparing crypto tax reports for Founder's clients. (VC ¶35; AG Aff. ¶ 16). At Founder's, McCormick created marketing and training materials ("Training Materials") that were uploaded to the Founder's YouTube page and available to the general public (https://www.youtube.com/@founderscpa). (VC ¶¶36-43; AG Aff. ¶¶ 17-20). Specifically, beginning on May 6, 2023, that YouTube page published a series of six videos under the title of "Crypto Taxes Made Easy." Each of the six videos was narrated by McCormick and included lengthy and detailed descriptions of GLG's crypto tax reporting processes and procedures, and

demonstrated how he and Founder's are using virtual replicas of the templates, formulas, "tidbits," and scripts that GLG had developed at great expense and over many years. (VC ¶¶39-43; AG Aff. ¶¶ 20-25 & Exs. 4 to 6 thereto).

Founder's also published links to a Google Drive folder housing virtual replicas of GLG's internally-developed processes, templates, formulas, scripts, "tidbits," automated converters, folder structures, client forms, and other Confidential Information (the "Founder's Drive"). (VC ¶37; AG Aff. ¶ 18). Founder's also uploaded a document entitled, "Crypto Reconciliation," which contains written instructions that mirror GLG's proprietary procedures and reference the templates and formulas described above. (AG Aff. ¶25 & Exs. 7 & 8).

### A. "Inventory" Process and Spreadsheet

Comparing GLG's and Founder's respective Inventory spreadsheets, it is clear they each have the same three tabs (though the tabs are named slightly differently), and the contents/format of each tab are nearly identical in their headings and layout. (*Compare* AG Aff. Exs. 1 & 4). Moreover, a review of the Founder's YouTube videos, as well as Founder's written instructional document (AG Aff. Ex. 7), demonstrate that Defendants are utilizing the same processes, methods, procedures, and tools to pull data in a specific format, and to "map" the data in order to populate and build the in inventory spreadsheet for each client, as GLG has created. (*Compare* AG Aff. Exs. 7 & 8). Not only did Defendants take that unique procedural step from GLG, but they utilized the very format, templates and internal procedures and sub-steps that GLG created.

### B. "Converter" Process and Spreadsheets

McCormick and Founder's are using GLG's internally created "converter" spreadsheets and all applicable procedures related thereto. The converters allow data from one online software program to be converted into a format and calculated in a manner that will be compatible for further internal processing and eventual upload to another, different software program. A

comparison of Founder's converters demonstrates that they are structured and formatted identically to GLG's, and that the very formulas from GLG's converters are imbedded within the formulas of Founder's converters. Specifically, the "output" tabs of each converter, unequivocally shows that GLG's formulas from its "Price," "Volume," and "Transaction ID" columns, among others, are fully imbedded into the corresponding formulas in the same columns of Founder's converters. (*Compare* AG Aff. Exs. 2 & 5, showing specific cell formulas).

        **C.**        **"All Transactions" Spreadsheets, "Tidbits," and Related Procedures**

McCormick and Founder's are using GLG's internally created "All Transactions" spreadsheets and all applicable procedures related thereto. A comparison of Founder's "Demo" All Transactions spreadsheet shows that it is structured and formatted identically to GLG's "Template" All Transactions spreadsheet. (*Compare* AG Aff. Exs. 3 & 6). Again, the very formulas contained in GLG's All Transactions spreadsheet are imbedded within the formulas of Founder's spreadsheet. As a very specific, and very damning example, both the GLG and Founder's All Transactions spreadsheets contain a tab entitled, "tidbits," which is a term coined by GLG for the specific formulas it created that, when applied, allow the transaction data to be grouped and formatted in a manner that is advantageous and efficient for the next steps in the process. Tidbits greatly streamline the process and shorten the time required to prepare tax reports. Compare (*Compare* AG Aff. Ex. 3, p. 2 (GLG tidbits) to Ex. 6, p. 2 (Founder's identical tidbit formulas and instructions)). Moreover, the Founder's written instructions (AG Aff. Ex. 7, p.8), fully describes how to apply tidbits, and its "Step 3" YouTube video depicts McCormick utilizing GLG's tidbits within the Founder's Demo All Transactions spreadsheet. (AG Aff. ¶22).

After becoming aware of McCormick and Founder's use and disclosure of its Confidential Information and trade secrets, GLG sent cease and desist letters to both Defendants on December 1, 2023. (VC ¶¶47-48) In response, Founder's has apparently removed the videos

from its YouTube page. (VC ¶49) However, despite GLG's attempts to seek informal mediation in order for Founder's and McCormick to cease utilizing the Confidential Information and trade secrets, Defendants have eschewed mediation and contend that they have not used GLG's Confidential Information. (VC ¶¶50-51) Indeed, McCormick has now also created a separate webpage (https://cryptospecialist.tax/) that once again shares many of the proprietary details of GLG's crypto tax reconciliation process, and passes them off as his own. (AG Aff. ¶ 28).

IV. **ARGUMENT**

To obtain temporary and preliminary injunctive relief under Federal Rule of Civil Procedure 65, GLG must satisfy four elements: (1) a substantial likelihood of success on its claims; (2) a threat of irreparable harm; (3) the balance of equities tips in its favor; and (4) injunctive relief will serve the public interest. *Winter v. NRDC, Inc*., 557 U.S. 7, 20 (2008).

A. **Gordon Law Is Substantially Likely to Prevail on All Its Claims.**

A "likelihood of success on the merits" does not mean proof by a preponderance of the evidence or that the plaintiff will definitely win the case; rather, a plaintiff must show that it has "some likelihood" of succeeding on the merits. *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020) (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). Based on the facts known to date, GLG easily clears this bar on all claims.

1. **Breach of Contract**

GLG is likely to prevail on its breach of contract claim against McCormick. McCormick signed the Agreement on June 29, 2022. (VC ¶27 & Ex. C thereto). The Agreement specifically defined "Confidential Information" as including "workpapers, templates for reconciling cryptocurrency transactions to generate tax reports, training videos, documents, manuals,… documentation on best practices, usage tips for software, and all information regarding the highly efficient process for crypto tax reporting that was developed by [GLG]" ("Confidential

Information"). (VC ¶28-29 & Ex. C., p. 1). The Agreement stated McCormick "may not and shall not copy, disclose or use, at any time, either during or after the term of employment, any Confidential Information for any reason," except in furtherance of his GLG duties. *Id*. pp. 1-2.

The Agreement is narrowly tailored to protect only Confidential Information and trade secrets, and specifically relates to the very information, processes, procedures, templates, formulas and scripts at issue here. Illinois courts routinely uphold non-disclosure covenants that are limited to confidential and trade secret information that an employer maintains. *Coady v. Harpo, Inc*., 719 N.E.2d 244, 250-51 (Ill. App. Ct. 1999). McCormick breached the Agreement in several ways, including by:

(a) using GLG's Confidential Information for his own, and Founder's, benefit;

(b) failing to keep GLG's Confidential Information secret and confidential; and

(c) disclosing GLG's Confidential Information to Founder's employees, and by publishing the Training Materials on Founder's YouTube page.

A restrictive covenant such as the Confidentiality Agreement will be upheld if it contains a reasonable restraint. *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396 (Ill. 2011). A restriction is reasonable if it: (1) is no greater than is required for the protection of a legitimate business interest of the employer, (2) does not impose undue hardship on the employee and (3) is not injurious to the public. *Id.* Measured by these standards, the nondisclosure provisions are reasonable in scope and enforceable.

First, GLG has a legitimate business interest in protecting its confidential information and trade secrets. *See*, *e.g.*, *Reliable Fire*, 965 N.E.2d at 403; *Office Mates 5, North Shore, Inc. v. Hazen*, 599 N.E.2d 1072, 1080 (Ill. App. Ct. 1992) (finding protectible interest when a former employee acquires confidential information through employment and subsequently attempts to use it for his own benefit); *Corroon & Black of Ill., Inc. v. Magner*, 494 N.E.2d 785, 791–92 (Ill.

App. Ct. 1986) (injunctive relief "is customary" where an ex-employee, in violation of a contractual obligation, threatens or is likely to disclose confidential information).

Next, the Confidentiality Agreement is reasonable in scope. It merely requires McCormick to: keep GLG's Confidential Information confidential; not use it for his own, or a third party's, benefit; and not disclose it. (VC ¶29 & Ex.C, pp. 1-2). Illinois courts "will enforce a restrictive covenant if the employee acquired confidential information through his employment and subsequently attempted to use it for his or her own benefit." *A.B. Dick & Co. v. Am. Pro-Tech*, 514 N.E.2d 45, 49 (Ill. App. Ct. 1987). Here, requiring McCormick to maintain the confidentiality of GLG's Confidential Information is reasonably necessary to protect GLG's legitimate interest in preserving the secrecy of its proprietary procedures, templates, formulas and scripts used in cryptocurrency tax report preparation. The perpetual duration of the nondisclosure restriction does not render it unenforceable, because where the interest the employer seeks to protect through a nondisclosure covenant is a trade secret or other confidential information, the covenant need not contain a geographic or temporal limit. *First Health Grp. Corp. v. Nat'l Prescription Adm'rs*, *Inc*., 155 F. Supp. 2d 194, 229 (M.D. Pa. 2001) (applying Illinois law). Accordingly, the nondisclosure covenant is valid and enforceable.

Finally, where, like here, an employee is not precluded from earning a livelihood under the provisions of his post-employment covenants, the restrictions will not be found to be unduly harsh or oppressive. *See, e.g., Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986). Here, the restrictions simply bar McCormick *only* from keeping, using or disclosing GLG's confidential information, which cannot be said to impede his ability to earn a livelihood. Thus, the Confidentiality Agreement is not unduly harsh or oppressive, nor does it offend public

policy. Accordingly, GLG has a substantial likelihood of prevailing on its breach of contract claim against McCormick.

## 2. Trade Secret Misappropriation

GLG is likely to prevail on its trade secrets misappropriation claims against Defendants. To establish misappropriation of a trade secret, GLG must demonstrate (1) existence of a trade secret; (2) misappropriation through improper acquisition, disclosure, or use; and (3) damages. *Aon Risk Servs. Cos. v. Alliant Ins. Servs.*, 415 F. Supp. 3d 843, 848 (N.D. Ill. 2019) (internal quotations and citations omitted). Because the pertinent definitions of the ITSA and DTSA overlap, Courts analyze the likelihood of success of the two claims together." *Id*.

### a. The Information Constitutes Trade Secrets

A "trade secret" is "information, including but not limited to technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that is: (1) sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." ITSA, 765 ILCS 1065/2(d). Whether information qualifies as a trade secret focuses fundamentally on the secrecy of such information. *Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.*, 940 F.Supp. 1300, 1304 (N.D. Ill. 1996); *Stampede Tool Warehouse, Inc. v. May*, 272 Ill.App.3d 580, 588 (1st Dist. 1995) (the key factor to establishing secrecy "is the ease with which the information can be readily duplicated without involving considerable time, effort or expense"). If information is not "readily available" from public sources but is developed over time with a substantial effort and expense, the information is "secret." *Id*. at 589.

Here, the information GLG seeks to protect—described above and in the Verified Complaint and Affidavit of Andrew Gordon—is highly sensitive information related to GLG's unique, internally developed processes and procedures for completing its clients' cryptocurrency tax reports, including GLG's various templates and spreadsheets, with its specific scripts, formulas, "converters" and "tidbits". The trade secrets also include GLG's further processes and procedures for finalizing the data and cryptocurrency tax reports for inclusion with tax returns. GLG's Confidential Information derives economic value because it is the product of many hours and millions of dollars in investment by GLG.

Similar information was found to qualify as trade secrets in *Geraci v. Macey*, 2016 U.S. Dist. LEXIS 89240 (N.D.Ill. July 11, 2016) In *Geraci*, the court found that the plaintiff's source code for a bankruptcy law firm's practice management software was the type of information that is protectable as a trade secret. *Id*. at *21-22. Specifically, it found that "the use of such software can be an asset by allowing a high volume of consumer bankruptcy cases to be handled efficiently …. It is not a stretch to infer that using proprietary software to run a high-volume practice could impart a competitive advantage for a consumer bankruptcy law practice." *Id*. at *17 (internal citations omitted).

Similarly, in this case, GLG's proprietary methods, procedures, templates, formulas and scripts give it a significant competitive advantage and would be extremely valuable to a competitor, such as Founder's, to gain such efficiency and accuracy improvements, without the need to invest any money or time in making those improvements. Founder's itself espouses on its own website that this exact information and innovation results in competitive advantages:

> Our crypto CPA firm uses a mix of crypto tax software and custom built scripts and tools to accurately compile all of your cryptocurrency transactions to generate reliable tax calculations.

*Available at*: https://crypto.founderscpa.com/crypto-tax-services; *see also Abbott-Interfast Corp. v. Harkabus*, 250 Ill.App.3d 13, 22 (2nd Dist. 1993) ("Items such as… business techniques can be trade secrets if the employer has developed the information over a number of years at great expense and kept it under tight security.") (internal quotes and cites omitted).

GLG takes reasonable steps to protect trade secrets. The security steps GLG has implemented include the (1) standard use of employee confidentiality and non-disclosure agreements, (2) distribution of confidentiality and data security policies in employee handbooks, (3) use of a private Google Drive, accessible only to GLG's employees in its cryptocurrency taxation department, that requires two-factor authentication for access, (4) and requiring terminating employees to certify and reaffirm their confidentiality obligations. (VC ¶¶ 21-23 & Exs. A-D). *See Vendavo Inc. v. Long*, 397 F. Supp. 3d 1115, 1135-36 (N.D.Ill. 2019) (citing illustrative cases and finding similar steps adequate to protect trade secrets).

### b. Defendants' Conduct Constitutes Misappropriation

Misappropriation occurs when a person acquires a trade secret by improper means or discloses or uses a trade secret without consent. 18 U.S.C. § 1839(5). Improper means include " breach or inducement of a breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6). "Misappropriation" includes both actual and threatened use or disclosure of a trade secret. 765 ILCS 1065/2(b). Here, there can be no doubt that McCormick and Founder's both used and disclosed GLG's trade secrets. The videos and documents shared by Founder's fully demonstrate that Defendants have used, and continue to use, GLG's trade secrets for their competing crypto tax reporting service without GLG's consent in violation of McCormick's contractual obligations to GLG. As fully described above and in the AG Affidavit, McCormick created and narrated all of the videos published by Founder's on YouTube, and which fully describe GLG's proprietary processes and procedures for crypto tax reporting preparation. (AG Aff. ¶¶20-24) The videos

also demonstrate McCormick using the various spreadsheets with the scripts and formulas that GLG created, and even demonstrate the use of GLG's "tidbits." (AG Aff. ¶22) Moreover, Founder's included links to their Google drive that included downloadable versions of GLG's "Inventory," "All Transactions," "Converter," and "Unmatched Transfers" spreadsheets, including virtually identical formulas and scripts. (AG Aff. ¶18, 20-24 & Exs. 4-7 & 10) The videos and documents shared by Founder's fully demonstrate that Defendants have used, and continue to use, GLG's trade secrets for their competing crypto tax reporting service without GLG's consent and in violation of McCormick's contractual obligations to GLG.

### c. Continued Misappropriation is Inevitable

Regardless if McCormick and/or Founder's may claim they will no longer use or disclose GLG's trade secrets, it is inevitable they will continue to do so, given McCormick's position with Founder's and further given Defendents' use of cryptospecialist.tax. A party may be held liable for misappropriation for hiring a competitor's employee and placing him in a position that would result in the inevitable disclosure or use of the trade secret. *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) (*PepsiCo I*); *PepsiCo, Inc. v. Redmond*, 1996 WL 3965 at *16-17 (N.D.Ill. Jan. 2, 1996) (*PepsiCo II*). The factors for determining whether disclosure of trade secrets is inevitable are: (1) level of competition between the employers; (2) similarity of positions; and (3) actions the new employer has taken to prevent the employee from using or disclosing the former employer's trade secrets. *Id*. at *20. Those factors are easily met here.

In *PepsiCo I*, although Redmond pledged not to reveal any trade secrets he learned at PepsiCo, including its marketing and distribution plans and methods, the Seventh Circuit recognized the inherent difficulty in maintaining that pledge: "unless Redmond possessed an uncanny ability to compartmentalize information, he would necessarily be making decisions … by relying on his knowledge of [PepsiCo] trade secrets." *Id*. at 1269. Accordingly, the Court

ordered an injunction. The factors also instruct that an injunction is appropriate in this case. GLG and Founder's are direct competitors. McCormick holds a nearly identical position for Founder's as he held for GLG. At Founder's, McCormick oversees the its cryptocurrency tax reporting services, and has prepared training materials for others to utilize in order to prepare clients' cryptocurrency tax reports. These were precisely his duties at GLG. Other than removing the Training Materials from its YouTube page, it appears Founder's has instituted no measures to ensure McCormick does not utilize GLG's trade secrets. In fact, it appears McCormick's knowledge of GLG's trade secrets is precisely why Founder's has enlisted him to prepare crypto tax reports for clients and to train others in its crypto tax preparation practice.

In carrying out his duties for Founder's, McCormick necessarily will rely upon GLG's trade secrets—otherwise he would be required to utilize less efficient and less accurate means. By already using and incorporating GLG's trade secrets into Founder's crypto tax preparation processes, and now starting up the separate cryptospecialist.tax webpage, Defendants have not only gained an unlawful jump start in their services, giving them a competitive advantage, but also show they have no intention of ceasing their unlawful activities. Allowing such use of GLG's trade secrets to continue would only exacerbate the unfair competitive edge.

### d. Gordon Law Is Entitled to Immediate Injunctive Relief

Where a statute, such as the ITSA or DTSA, expressly authorizes injunctive relief, a plaintiff need only show the defendant's violation of the Act. *Illinois Bell Tel. Co. v. Lake County Grading*, 313 Ill.App.3d 184, 189 (2nd Dist. 2000). Accordingly, the rules of equity requiring a showing of irreparable harm and a lack of adequate remedy at law need not be shown. *Id.*; *Lucini Italia Co. v. Grappolini*, 2003 WL 1989605, *18 (N.D.Ill. Apr. 28, 2003) (finding once a violation of ITSA is found, plaintiff was "not required to establish irreparable

injury and a lack of adequate legal remedy"). As GLG has established it is likely to succeed on its claim that Defendants misappropriated GLG's trade secrets, it is entitled to injunctive relief.

### 3. Tortious Interference with Contract

GLG is likely to prevail on its tortious interference with contract claim against Founder's. To succeed on a claim for tortious interference with a contract, a plaintiff must prove: (1) an enforceable contract between plaintiff and a third party; (2) the defendant was aware of the contract; (3) the defendant intentionally and unjustifiably induced a breach of the contract; (4) the wrongful conduct of the defendant caused a breach of contract by a third party; and (5) damages. *Poulos v. Lutheran Social Servs. of Illinois, Inc.*, 312 Ill.App.3d 731 (1st Dist. 2000).

The terms of the Agreement preclude McCormick from retaining, disclosing or using GLG's Confidential Information. Founder's is fully aware of McCormick's contractual obligations, at the very latest by December 13, 2023, and very likely much earlier. (VC ¶48) While Founder's apparently took down the YouTube videos, it has taken no steps to curtail McCormick's continued use of GLG's Confidential Information, taking the position that the information sought to be protected amounts to only "information derived from third-party, public, calculators and websites" and that McCormick's work for Founder's is based solely on the training he received after joining Founder's. (VC ¶ 51)

However, showing the disingenuous nature of Founder's argument, Founder's itself boasts of its ability to leverage innovations and proprietary scripts in its cryptocurrency tax reporting practice. It clearly states on its website that the use of available online tax calculators, etc., is not advantageous, and that its competitive advantage is through use of "custom built scripts." *Available at*: https://crypto.founderscpa.com/crypto-tax-services. A basic review of the Training Materials, YouTube videos, and the documents McCormick showcased in those videos (with copies made available through the Founder's Drive), clearly demonstrate that McCormick,

and Founder's, are using GLG's procedures, templates, and spreadsheets with GLG's formulas, scripts and "tidbits." Founder's use of McCormick, and GLG's Confidential Information and trade secrets, is tortious interference with McCormick's contractual duties to GLG.

B. **Gordon Law Will Suffer Irreparable Harm**

Harm is "irreparable" if courts cannot prevent it or fully solve it by a final judgment after trial. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1089 (7th Cir. 2008). GLG has no adequate remedy at law and will suffer irreparable harm without injunctive relief. The very use of confidential information or trade secrets constitutes irreparable harm. *See IDS Fin. Servs. v. Smithson*, 843 F. Supp. 415, 418–19 (N.D. Ill. 1994) ("the threat is significant that the harm experience[d] by the misappropriation or misuse of trade secrets will be irreparable.... Additionally, once the trade secrets are disclosed they will no longer be confidential and their value to IDS will be decreased."). In fact, courts often presume "irreparable harm to the plaintiff in cases of trade secret misappropriation." *Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 700 (N.D. Ill. 2004).

Here, GLG's remedy at law is inadequate because Defendants have used, and inevitably will continue to use, its Confidential Information and trade secrets in direct competition with GLG. Once confidential information and trade secrets are misappropriated, there is no way to make it confidential and secret again. Likewise there is no way to truly calculate the harm suffered by GLG as a result of the loss of its Confidential Information and trade secrets. One cannot reasonably forecast what business it lost due to the misappropriation.

Moreover, the court in *Vendavo v. Long* found irreparable harm because it "would be essentially impossible to determine the costs [Founder's] unjustly avoided by using these secrets, or the damage to [GLG] that could be caused by allowing [McCormick] to use its own secrets against it." *Vendavo*, 397 F. Supp. 3d at 1144; *see also Intertek USA Inc. v. AmSpec, LLC*, No.

14 cv 6160, 2014 WL 4477933, at *6 (N.D. Ill. Sept. 11, 2014) (finding irreparable harm when ex-employees improperly disclosed confidential information to competitor; enjoining competitor's operation of Chicago location as a result of misappropriation). GLG is entitled to protect its Confidential Information and trade secrets through injunctive relief.

      C.    **<u>Balance of Hardships and Public Interest Favor Entry of a Temporary Restraining Order and Preliminary Injunction</u>**

Under the sliding-scale approach, the balance-of-hardships analysis tilts in GLG's favor. *See Ty, Inc. v. The Jones Grp.*, 237 F.3d 891, 895 (7th Cir. 2001) ("the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position."). Here, Defendants have no legitimate right to unlawfully compete with GLG through misappropriation of its Confidential Information and trade secrets. Accordingly, Defendants will suffer no harm to any legitimate interest through entry of a temporary restraining order and preliminary injunction. *See*, *e.g.*, *Arcadia Health Servs., Inc. v. A+ Health Care, Inc.*, No. 96 C 8363, 1997 U.S. Dist. LEXIS 705, at *14 (N.D. Ill. Jan. 17, 1997) (no harm to former employee by forcing her to comply with the terms of her contract with plaintiff).

Conversely, GLG will suffer significant, irreparable harm if the Court does not grant its Motion. It will lose competitive position and control over its Confidential Information and trade secrets. Once control over this information is lost, GLG can never get it back again, and can never again fairly compete in the marketplace. The public interest also supports "enforcing valid contracts," such as the Confidentiality Agreement here. *See, e.g.*, Optionmonster *Holdings, Inc. v. Tavant Techs., Inc.*, No. 10 C 2792, 2010 WL 2639809, at *10 (N.D. Ill. June 29, 2010).

V.    **CONCLUSION**

For all of these reasons, GLG requests that the Court award it temporary and preliminary injunctive relief on the terms contained in GLG's motion filed in conjunction herewith.

Dated:  April 9, 2024            Respectfully submitted,

                                                   **THE GORDON LAW GROUP, LTD.,**

                                                   By: /s/ Jeffrey M. Glass
                                                           One of Plaintiff's Attorneys

| | |
|---|---|
| Jeffrey M. Glass (ARDC No.: 6206976) | Michael F. Hughes (ARDC No.: 6279175) |
| AMUNDSEN DAVIS, LLC | AMUNDSEN DAVIS, LLC |
| 308 West State Street, Suite 320 | 3815 E. Main Street, Suite A-1 |
| Rockford, IL 61101 | St. Charles, IL 60174 |
| (815) 904-8804 - Telephone | (630) 587-7925 - Telephone |
| (815) 987-9891 - Facsimile | (630) 587-7960 - Facsimile |
| JGlass@amundendavislaw.com | MHughes@amundendavislaw.com |
| **ATTORNEYS FOR PLAINTIFF** | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 9, 2024, he electronically filed the attached **PLAINTIFF GORDON LAW GROUP, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** with the Clerk of the Court using the CM/ECF system. The undersigned further states said filing was sent to the following individual(s) via Electronic Mail and Federal Express-Overnight Delivery:

| | |
|---|---|
| Ms. Johanna Wilbert | Mr. R. Mark Halligan |
| Quarles & Brady LLP | FisherBroyles, LLP |
| 411 East Wisconsin Avenue, Suite 2400 | 203 North LaSalle Street, Suite 2100 |
| Milwaukee, WI 53202-4428 | Chicago, Illinois 60601 |
| Johanna.Wilbert@quarles.com | rmark.halligan@fisherbroyles.com |
| *Attorney for Defendant, FPSG LLC* | *Attorney for Defendant, Justin McCormick* |

By: /s/ Jeffrey M. Glass
   One of Plaintiff's Attorneys

Jeffrey M. Glass (ARDC No.: 6206976)   Michael F. Hughes (ARDC No.: 6279175)
AMUNDSEN DAVIS, LLC   AMUNDSEN DAVIS, LLC
308 West State Street, Suite 320   3815 E. Main Street, Suite A-1
Rockford, IL 61101   St. Charles, IL 60174
(815) 904-8804 - Telephone   (630) 587-7925 - Telephone
(815) 987-9891 - Facsimile   (630) 587-7960 - Facsimile
JGlass@amundendavislaw.com   MHughes@amundendavislaw.com
**ATTORNEYS FOR PLAINTIFF**